UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BUFFALO STATE ALUMNI ASSOCIATION, INC.,
BUFFALO STATE COLLEGE FOUNDATION
HOUSING CORPORATION,
LPCIMINELLI, INC., and
LPCIMINELLI CONSTRUCTION CORP.,

Plaintiffs,

**REPORT AND RECOMMENDATION**

14-CV-00383-RJA-JJM

v.

THE CINCINNATI INSURANCE COMPANY,
ACADIA INSURANCE COMPANY
SELECTIVE WAY INSURANCE COMPANY,
and HUBER CONSTRUCTION, INC.,

Defendants.

---

This action has been referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings [8].[1] Before me is plaintiffs' motion to remand the action to State of New York Supreme Court, County of Erie due to lack of diversity jurisdiction [16], and the motion of defendant Acadia Insurance Company ("Acadia") for realignment of the parties in order to preserve diversity [39]. Oral argument was held on October 10, 2014 [44], followed by supplemental briefing. For the following reasons, I recommend that Acadia's motion for realignment be denied, and that plaintiffs' motion for remand be granted.

---

[1] Bracketed references are to CM/ECF docket entries.

**BACKGROUND**

On April 15, 2014, plaintiffs commenced this action against defendants The Cincinnati Insurance Company ("Cincinnati"), Acadia, and Selective Way Insurance Company ("Selective")[2] in State of New York Supreme Court, County of Erie, seeking a declaratory judgment entitling them to defense and indemnification from the defendant insurers in connection with a personal injury action pending in State of New York Supreme Court, County of Niagara entitled "Lamarr v. Buffalo State Alumni Association, Inc." (the "Lamarr action"). Complaint [1-5]. The Lamarr action sought damages against the current plaintiffs on behalf of Gilbert Lamarr, an employee of Huber Construction, Inc. ("Huber"), and his wife, Heidi Lamarr, for personal injuries allegedly sustained by Mr. Lamarr on June 4 and July 2, 2010 at the Buffalo State Housing Project in Buffalo [1-6].

On May 22, 2014 defendants removed the action to this court pursuant to 28 U.S.C. §§1441 and 1446, based on diversity of citizenship under 28 U.S.C. §1332(a)(1). Notice of Removal [1]. Cincinnati filed its Answer to the Complaint on May 29, 2014 [5], and Selective filed its Answer on June 12, 2014 [13]. On June 16, 2014 plaintiffs filed an Amended Complaint [15] pursuant Fed. R. Civ. P. ("Rule") 15(a)(1)(B), which allows a party to "amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading".

The Amended Complaint added Huber, a subcontractor of plaintiff LPCiminelli[3] on the Buffalo State Housing Project, as an additional defendant, alleging that "LPCiminelli

---

2 Although Selective was originally sued as "Selective Insurance Company", its correct name is "Selective Way Insurance Company". *See* Selective's Answer [13].

3 Plaintiffs refer to themselves collectively as "LPCiminelli".

entered into a subcontract with Huber whereby Huber agreed to procure primary-level Comprehensive Automobile Liability coverage for the benefit of LPCiminelli. While Huber purchased an automobile-liability insurance policy through Cincinnati, Cincinnati has not provided the coverage called for in LPCiminelli's subcontract with Huber.  Thus, Huber breached its subcontract with LPCiminelli by failing to procure adequate insurance coverage for LPCiminelli . . . . In the event that LPCiminelli is not provided a defense and indemnification by Cincinnati, LPCiminelli is entitled to a declaration that Huber must defend and indemnify LPCiminelli in the [Lamarr action] commensurate with the amount of insurance Huber promised to procure for LPCiminelli in the parties' subcontract." [15], ¶¶59-61, 64.

On June 16, 2014 plaintiffs moved to remand this action to State of New York Supreme Court, County of Erie pursuant to 28 U.S.C. §1447(c), alleging that "the amended complaint . . . includes a cause of action against a new, nondiverse defendant [Huber].  As a result, diversity of citizenship no longer exists between the plaintiff and the defendants, and this Court no longer has subject-matter jurisdiction under 28 U.S.C. §1332(a)".  O'Neill Declaration [16-1], ¶¶3-4.

In opposing the motion, defendants Cincinnati, Acadia and Selective argue that remand should be denied pursuant to 28 U.S.C. §1447(e), or in the alternative that the court should drop Huber as a party pursuant to Rule 21.  *See* Cincinnati's Memorandum of Law [26-2], Acadia's Memorandum of Law [25-3] and Selective's Affirmation [27].  In addition, Acadia moves to realign the parties so that diversity is preserved, arguing that "Huber's interests are in fact more closely aligned with those of plaintiffs than with those of the defendant insurers". Kohane Affidavit [39], ¶2. While Huber initially joined in plaintiffs' request for remand (Huber's

Memorandum of Law [35-2]), it now joins in Acadia's request for realignment to enable this court to continue to assert jurisdiction. Huber's Letter Brief [54].

## ANALYSIS

### A. Acadia's Motion for Realignment

Acadia argues that "a federal court must look beyond the initial pleading and should realign the parties according to their true interests when considering whether or not there is complete diversity". Kohane Affidavit [39], ¶10. While realignment may destroy diversity, it also "may create diversity, in which case the district court must retain jurisdiction". 15 Moore's Federal Practice, §102.20[1] (Matthew Bender 3d ed. 2014).

Plaintiffs admit that "Huber and LPCiminelli may have a common interest in ultimately seeing Cincinnati provide insurance coverage" (plaintiffs' Letter Brief [51], p. 6). However, "if in this action Cincinnati ultimately does not defend or indemnify LPCiminelli, Huber effectively will have failed to procure the automobile-liability insurance coverage it contracted to provide for LPCiminelli under the parties' subcontract". O'Neill Declaration [16-1], ¶15; Amended Complaint [15], ¶64.

Therefore, the interests of Huber and LPCiminelli, while overlapping in some respects, diverge in others. "Realignment hinges on those issues that divide the parties, not on those on which they agree", Maryland Casualty Co. v. W.R. Grace and Co., 23 F.3d 617, 623 (2d Cir.1993), cert. denied, 513 U.S. 1052 (1994), and "[t]he fact that one defendant may benefit should plaintiff prevail against another defendant is not in and of itself sufficient to sustain

realignment". Syms, Inc. v. IBI Security Service, Inc., 586 F. Supp. 53, 56 (S.D.N.Y. 1984). Accordingly, I cannot realign Huber as a plaintiff.

**B. Plaintiffs' Motion for Remand**

28 U.S.C. §1332(a)(1) "and its predecessors have consistently been held to require complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original). Thus, "diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant". Id. at 374.

Acadia argues that "plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection to the controversy". Acadia's Memorandum of Law [25-3], p. 7. However, "[t]he doctrine of fraudulent joinder . . . is legally inapplicable when, as here, a nondiverse party is added after removal". Hosein v. CDL West 45th Street, LLC, 2013 WL 4780051, *3 (S.D.N.Y. 2013).

Moreover, Huber clearly has a connection to this dispute: *see* Cincinnati's Memorandum of Law [26-2], p. 4, n. 2 ("Cincinnati does not dispute that Huber is a proper party"); Huber's Memorandum of Law [35-2], p. 7 ("Huber is a proper party to the action"). As a proper party, Huber's citizenship cannot be ignored. "Even though a party is merely proper . . . if in fact he or she has been joined in the action, that party's citizenship must be considered for purposes of determining whether subject matter jurisdiction exists." 13E Wright, Miller, Cooper

*et al*., Federal Practice & Procedure §3606 (3d ed. 2014); Baker v. FCH Services, Inc., 376 F. Supp. 1365, 1367 (S.D.N.Y. 1974).

"When a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Rockwell International Corp. v. United States, 549 U.S. 457, 473-74 (2007). If the amendment joins a nondiverse defendant, then diversity jurisdiction is destroyed. *See* Owen Equipment, 437 U.S. at 374 ("it is clear that the respondent could not originally have brought suit in federal court naming Owen and OPPD as co-defendants, since citizens of Iowa would have been on both sides of the litigation. Yet the identical lawsuit resulted when she amended her complaint. Complete diversity was destroyed just as surely as if she had sued Owen initially").

Cincinnati admits that by adding Huber as a defendant, "LP Ciminelli . . . destroyed diversity". Cincinnati's Memorandum of Law [26-2], p. 4. Nevertheless, it argues that I should apply 28 U.S.C. §1447(e), which provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder". Cincinnati's Memorandum of Law [26-2] (*citing* Masters v. Erie Insurance Co., 2014 U.S. Dist. LEXIS 19037, *4 (W.D.N.Y. 2014) (Skretny, J.)).

In Masters, Judge Skretny perceived "a tension between 28 U.S.C.§1447(e), which grants the court discretion to deny an amendment when plaintiff 'seeks to join' defendants who would divest the Court of subject matter jurisdiction and require a remand, and Rule 15, which allows plaintiffs to amend without the court's leave," and noted that "every federal court that has considered the issue [has concluded] that the discretionary decision called for by

§1447(e) is appropriate even when plaintiff has amended as a matter of course under Rule 15(a)". Id., **3-4.

Although I respect Judge Skretny's views, this court "is not bound by the decisions of any courts other than the Second Circuit Court of Appeals and the United States Supreme Court" (Retail Industry Leaders Association v. Suffolk County, 497 F. Supp.2d 403, 416 (E.D.N.Y. 2007)), neither of which have addressed the interplay between Rule 15(a)(1) and 28 U.S.C. §1447(e). While "I of course look for guidance to a decision by a district judge of this court . . . . a single district judge's ruling does not establish binding precedent within a district". In re Application of the United States for an Order Authorizing the Use of a Pen Register and a Trap and Trace Device on Wireless Telephone, 2008 WL 5255815, *1 (E.D.N.Y. 2008) (Orenstein, M.J.).[4] "As a result, I am obliged to give the matter presented to me for decision my best independent reading of applicable law, regardless of whether that reading accords with that of my superior." Id.

I fail to see how Masters and the authorities which it cites can find a "tension" between 28 U.S.C. §1447(e) and Rule 15(a)(1) without first interpreting the text of either provision. That should be the court's initial inquiry, both as to the statute and to the Rule, which "is to be construed by application of the same principles as those used in interpreting statutes". 1 Moore's Federal Practice, §1.21[1][d]. *See* New York State Division of Human Rights on Complaint of Housing Opportunities Made Equal, Inc. v. Folino, 2011 WL 11068867, *2 (W.D.N.Y. 2011) (Arcara, J.) (where the removal statute's "language . . . is clear and consistent,

---

[4] *See also* Camreta v. Greene, ___ U.S. ___, 131 S.Ct. 2020, 2033 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case").

we may not go beyond it"); Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 540-41 (1991) ("We give the Federal Rules of Civil Procedure their plain meaning . . . . As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous").

28 U.S.C. §1447(e) applies only where a plaintiff "*seeks* to join additional defendants" (emphasis added). "We give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." Williams v. Taylor, 529 U.S. 420, 431 (2000). "To 'seek' means 'to ask'. The statutory language does not abrogate the judicial officer's discretion to deny the request." United States v. Morales, 1987 WL 5770, *3 (E.D.Wis. 1987).[5]

Here, however, plaintiffs did not "seek" leave to amend under Rule 15(a)(2). Instead, they amended "as of course" under Rule 15(a)(1), which does not require leave of court. *See* 6 Wright, Miller & Kane, Federal Practice and Procedure (Civil) §1479 (3d ed. 2014) ("any attempt to change the parties by amendment before the time to amend as of course has expired should be governed by Rule 15(a)(1) and may be made without leave of court"); 3 Moore's Federal Practice, §15.16[1] ("a party's right to amend as a matter of course, if accomplished within the deadlines set by Rule 15(a), extends to all amendments including amendments to add or drop parties"); Washington v. New York City Board. of Estimate, 709 F.2d 792, 795 (2d Cir.), cert. denied, 464 U.S. 1013 (1983) ("Washington's May 14, 1981 request to amend the caption to

[5] While the meaning of "seek" seems clear, if it were ambiguous I would still be required to "resolve any ambiguity in favor of remand". Boeck v. Pacific Cycle, Inc., 2011 WL 98493, *2 (W.D.N.Y. 2011) (Arcara, J.); Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213, 220 (2d Cir. 2013).

add . . . defendants was his first attempt to amend his complaint . . . . Washington was entitled on May 14, 1981 to amend his complaint *as a matter of right*, and his request at that time should have been granted") (emphasis added).

It has been suggested that "a party may not employ Rule 15(a) to interpose an amendment that would deprive the district court of jurisdiction over a removed action". 6 Wright, Miller, Kane, Federal Practice and Procedure (Civil) §1477.  For example, in Clinco v. Roberts, 41 F.Supp.2d 1080, 1086-87 (C.D.Cal. 1999), the court reasoned that "[t]o apply the permissive standard of Rule 15(a) in this situation would allow a plaintiff to improperly manipulate the forum of an action, a result that is quite different from the policies of Rule 15(a)".

However, "policy arguments come into play only to the extent that [language] is ambiguous".  Sebelius v. Cloer, ___U.S.___, 133 S.Ct. 1886, 1895-96 (2013).  There is no ambiguity in Rule 15(a)(1): it does not limit the types of pleading amendments that may be made "as of course", and the court may not rely on "policy" to read into the Rule an exception for amendments which defeat jurisdiction.  *See* Connecticut National Bank v. Germain 503 U.S. 249, 254 (1992) ("nowhere . . . has Congress indicated that the unadorned words of [the statute] are in some way limited by implication.  It would be dangerous in the extreme to infer that a case for which the words of an instrument expressly provide, shall be exempted from its operation"); Linea Area Nacional de Chile S.A. v. Meissner, 65 F.3d 1034, 1040 (2d Cir. 1995) ("as a policy matter, whether an exception should be created is a question for legislative rather than judicial

judgment"); United States v. Owen, 500 F.3d 83, 89-90 (2d Cir. 2007), cert. denied, 552 U.S. 1237 (2008) ("Courts do not have license to question legislative decisions on policy grounds").[6]

"While Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed . . . a plaintiff's right to amend the complaint once as of right may be described as 'absolute'." Gaming Marketing Solutions, Inc. v. Cross, 528 F.Supp.2d 403, 406 (S.D.N.Y. 2007). Accordingly, 28 U.S.C. §1447(e) cannot apply to defeat joinder of a party by amendment under Rule 15(a)(1), since "[t]he court has no discretion to deny a timely amendment made 'as a matter of course'". 3 Moore's Federal Practice, §15.10[2].[7] *See* Johnson In re Agent Orange Product Liability Litigation, 517 F.3d 76, 103-04 (2d Cir. 2008), cert. denied,, 555 U.S. 1218 (2009) ("the Stephensons were entitled to amend their complaint as a matter of right without leave of the district court . . . . the district court erred in denying the amendment"); Gosain v. State Bank of India, 2011 WL 181517, *4 (2d Cir. 2011) (Summary Order) ("it was error for the district court to reject the amended complaint when Gosain still had the right to file an amended pleading as a matter of course without leave of the court pursuant to Rule 15(a)"); Williams v. Board of

---

[6] *See also* Strope v. Cummings 653 F.3d 1271, 1275 (10th Cir. 2011) ("absent constitutional defects, courts are not at liberty to create exceptions to Congress' unambiguous statutory language, even to prevent manifest injustice"); Garcia v. Adams, 2006 WL 403838, *7 (E.D.Cal. 2006) ("Adams cannot read limitations into the statute that do not exist)"; National Foundation, Inc. v. United States, 15 Cl.Ct. 209, 212 (Cl.Ct. 1988) ("the court cannot disregard the unambiguous terms of the statutes to further a desirable policy objective").

[7] Where the drafters of the Rules intended to give the court discretion over procedures to be taken "as of course", they expressly said so. *See* Harris v. Twentieth Century-Fox Film Corp., 139 F.2d 571, 572 (2d Cir. 1943) ("Rule 54(d) provides: 'Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs'. The 'unless' clause clearly gives the trial court discretion in allowing costs"). By contrast, Rule 15(a)(1) contains no "unless" clause.

Regents of University System of Georgia, 477 F.3d 1282, 1292 n. 6 (11th Cir. 2007) ("When the plaintiff has the right to file an amended complaint *as a matter of course* . . . the court lacks the discretion to reject the amended complaint") (emphasis in original).

While admitting that plaintiffs' joinder of Huber by amendment has "destroyed diversity following removal" (Cincinnati's Memorandum of Law [26-2], p. 4), Cincinnati argues that remand is "only permissible if consistent with principles of fundamental fairness". Id. However, I see nothing inherently unfair in allowing plaintiffs to join a party by amendment "as of course" in order to obtain remand. *See* Delfosse v. Continental Cas. Co., 2011 WL 2601277, *3 (E.D.Wis. 2011) ("[I]t is obvious that the addition of the new parties is motivated at least partly by the Plaintiff's desire to remain in state court. Forum shopping has a bad name, but in reality it happens all the time. After all, removal to federal court is itself a form of forum shopping. Within bounds, there is nothing to prevent attorneys from using the procedural rules to secure the forum of their choice").

In any event, courts may not "substitute our notions of fairness for the duties which Congress has specifically articulated". Lee v. Burkhart, 991 F.2d 1004, 1010 n. 5 (2d Cir. 1993). Where (as here) diversity jurisdiction no longer exists, the "duty which Congress has specifically articulated" is clearly set forth in 28 U.S.C. §1447(c): "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded" (emphasis added). "[T]he mandatory 'shall' . . . creates an obligation impervious to judicial discretion". Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35 (1998) (interpreting the phrase "shall be remanded" under 28 U.S.C. §1407(a)); National Association of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 661-62 (2007) ("The

word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive"). Notwithstanding the contrary authority cited by defendants, I "have to give effect to this plain command . . . even if doing that will reverse [a] longstanding practice", since "[a]ge is no antidote to clear inconsistency with a statute". Lexecon, 523 U.S. at 35.[8]

Acadia suggests that "in the interest of fundamental fairness and justice, this Court can deny joinder under §1447(e) by exercising its power to *sua sponte* drop Huber as a party under Rule 21, thus restoring complete diversity". Acadia's Memorandum of Law [25-3], p. 13. By asking me to "restore" complete diversity, Acadia admits that diversity jurisdiction does not now exist. "The 'restoration' of a thing never lost . . . is a definitional impossibility". Logan v. United States, 552 U.S. 23, 31 (2007).

Since complete diversity (and, therefore, subject matter jurisdiction) does not currently exist, I fail to see how the court can exercise nonexistent jurisdiction to order Huber dropped as a party pursuant to Rule 21. *See* Owen Equipment, 437 U.S. at 370 and n. 7 ("it is axiomatic that the Federal Rules of Civil Procedure do not create . . . federal jurisdiction" (*citing* Rule 82)). In my view, any such order would be a nullity, since, as Judge Arcara has held, "[t]he validity of an order of a federal court depends upon that court's having jurisdiction over . . . the subject matter". New York State Division of Human Rights, 2011 WL 11068867, *1 (*quoting* Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701

---

[8] In approving the "reasoned decisions" holding that §1447(e) applies even when a party is added as of course under Rule 15(a)(1), Judge Skretny noted that "they align with the guiding principle that the propriety of removal is to be determined by the pleadings at the time of removal". Masters, *4. However, the propriety of removal is not at issue here - rather, the question is whether the *post*-removal joinder of a nondiverse party necessitates remand.

(1982)). *See* Debevoise v. Rutland Railway Corp., 291 F.2d 379, 380, 381 (2d Cir.), cert. denied, 386 U.S. 876 (1961) ("It is clear that the district court . . . was without jurisdiction to take any action in the case. The parties were not of diverse citizenship . . . . Since the district court had no jurisdiction all proceedings taken in it were a nullity").[9]

In any event, 28 U.S.C. §1447(c) clearly and unconditionally states that where subject matter jurisdiction does not exist, the court must remand the action. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." Botany Worsted Mills v. United States, 278 U.S. 282, 289 (1929). Therefore, mindful of my obligation "to construe removal statutes strictly and resolve doubts in favor of remand" (Purdue Pharma, 704 F.3d at 220), I conclude that remand is mandated irrespective of the availability of Rule 21.

**CONCLUSION**

Given the weight of contrary authority on the issue raised by this motion, I feel "akin to the lone salmon swimming upstream against a raging current". In re Johnston, Inc., 164 B.R. 551, 556 (Bkrtcy.E.D.Tex. 1994). Nevertheless, since diversity jurisdiction has been destroyed by plaintiffs' joinder of Huber as a nondiverse party, the command of 28 U.S.C. §1447(c) seems clear.

---

[9] *But see* Nolan v. Olean General Hospital, 2013 WL 3475475, *1 (W.D.N.Y. 2013), in which Judge Arcara "note[d], without ruling, that dismissal of . . . nondiverse defendants pursuant to [Rule] 21 may . . . cure the defect in subject matter jurisdiction". However, as stated therein, that view was not expressed as a formal ruling.

Accordingly, I recommend that Acadia's motion for realignment [39] be denied, and that plaintiffs' motion for remand of this action to State of New York Supreme Court, County of Erie [16] be granted. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by November 21, 2014 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 4, 2014

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge